
IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 107-105 |
| | ) | |
| BYRON D. GRIFFIN | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Court-appointed defense counsel Stephen H. Brown submitted a voucher with appended time sheets requesting reimbursement for representing Defendant Byron D. Griffin in the above-captioned case from November 6, 2007 through May 23, 2008. The Honorable Lisa Godbey Wood, United States District Judge, referred the matter to the undersigned for a recommendation as to an appropriate amount to be paid on Mr. Brown's request for attorney's fees and expenses pursuant to the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Mr. Brown be reimbursed for a total amount of **$4,630.41**.

### I. BACKGROUND

The CJA provides that at the conclusion of a CJA representation, an appointed attorney shall be compensated for time expended in court and for time "reasonably expended out of court" and shall be reimbursed "for expenses reasonably incurred." 18 U.S.C. § 3006A(d)(1). The district is empowered to "fix" the compensation for CJA-appointed

counsel and has the statutory authority and discretion to determine what is a reasonable expense or a reasonable use of billable time. Id. § 3006A(d)(5); United States v. Griggs, 240 F.3d 974, 974 (11th Cir. 2001) (*per curiam*).

Furthermore, in the Augusta Division of the Southern District of Georgia, a handout explaining the duties, responsibilities, and rules regarding compensation is available from the Clerk of Court. On page one of these instructions, attached hereto as Exhibit A, counsel are specifically informed, "Counsel shall not delegate his or her responsibility to other counsel (except for emergencies with approval of the court and consent of defendant)." Thus, in the past, this Court has not looked favorably on requests for compensation in CJA vouchers for work performed by an attorney that is not the attorney named in the CJA appointment papers, even if the "other" attorney is a partner or associate in the same firm as the CJA-appointed attorney. Notably, however, instructions available from the Clerk of Court also specifically direct a CJA-appointed attorney to the Guidelines for the Administration of the Criminal Justice Act and Related Statutes, Volume 7, Guide to Judiciary Policies and Procedures, Section A ("the Guidelines") for additional information concerning the appointment. Chapter 2, Part B § 2.11A of the Guidelines allow appointed counsel to "claim compensation for services furnished by a partner or associate . . . within the maximum compensation allowed by the Act, separately identifying the provider of each service."[1] The Guidelines, *available at* http://jnet.ao.dcn/Guide/Volume_7/Section_A/

---

[1]The Guidelines explain:

> The **Guide to Judiciary Policies and Procedures** is the official medium by which guidance and information is provided to the Judiciary in support of its day-to-day operations. The **Guide** also codifies policies which

2

Chapter_2.html#211. Thus, the instructions provided by the Clerk of Court are at odds with the rules for reimbursement approved by the Judicial Conference of the United States.

## II. DISCUSSION

### A. Initial Review of Voucher

Court personnel reviewed Mr. Brown's CJA voucher submitted in this case for compliance with the Guidelines and mathematical accuracy prior to the undersigned's review. Upon concluding that review, 14.8 hours were deducted from the 62.9 hours claimed for out-of-court work because those 14.8 hours of work had been performed by paralegal personnel; although the 14.8 hours were reimbursable, they could not be reimbursed at an attorney's hourly rate. Those 14.8 hours were "deducted" from the out-of-court portion of the voucher and then added back at a reduced rate as an expense, for a total amount claimed of $5,817.07.

### B. Court's Review of Voucher

In making this recommendation, the undersigned reviewed the entire voucher, the time sheets submitted, and the record of the case as it relates to Mr. Brown's representation of Defendant Griffin. By virtue of its involvement with the pre-trial portions of this case, including ruling on the pre-trial and discovery motions filed in the case, the Court is also familiar with the case and the time generally required by counsel to prepare such a case for final disposition.

---

are promulgated by Director of the AO and approved by the Judicial Conference of the United States.

The Guidelines, *available at* http://jnet.ao.dcn/Guide/Index.html.

3

By way of general background, Defendant Griffin was charged, along with two co-defendants, with one count of Conspiracy to Possess and Utter Counterfeit Securities of an Organization, in violation of 18 U.S.C. § 371. (Doc. no. 1). As set forth in the Indictment, the object of the conspiracy "was to obtain cash from various businesses by using and negotiating counterfeited securities, specifically, checks which the defendants manufactured so that they would falsely and fraudulently appear to be actual checks from legitimate businesses operating in interstate commerce." (Id. at 2). The legitimate organizations operating in interstate commerce included, among others, businesses located in Augusta, Georgia and North Augusta, South Carolina. (Id.). At the time of his arrest on these federal charges, Defendant Griffin already had an extensive criminal history, including pending State charges.[2]

After his CJA appointment to represent Defendant Griffin, Mr. Brown made his first appearance at the initial appearance and arraignment. Mr. Brown filed eleven (11) pre-trial motions on Defendant Griffin's behalf. (Doc. nos. 24-34). Jury selection was set for January 7, 2008 (doc. no. 62), and on December 14, 2007, Defendant Griffin appeared before Judge Wood to enter a guilty plea (doc. nos. 81-83). Prior to sentencing, Mr. Brown worked on obtaining as favorable as possible Presentence Investigation Report for Defendant Griffin and responded to the government's motion for a downward departure.[3] (Out-of-Court Hourly

---

[2]Indeed, the Court had to issue a Writ to Obtain State Prisoner (doc. no. 4) to secure Defendant Griffin's presence at the November 6, 2007 initial appearance and arraignment in this case, and Defendant Griffin was not eligible for pre-trial release in this case because of the pending State charges (doc. no. 23).

[3]Here, the Court notes that after Mr. Brown responded to the government's motion for a downward departure, the government increased its estimation of the level of

4

Worksheet, pp. 16-18, Jan. 30, Feb. 11, Feb. 13, Mar. 3, Mar. 24, Apr. 21, May 21, 2008 Entries; doc. no. 98). On May 22, 2008, Defendant Griffin was sentenced to 60 months of imprisonment, which is to be served concurrently with a term of 78 months of imprisonment for a conviction in <u>United States v. Griffin</u>, CR 107-165 (S.D. Ga. Dec. 13, 2007).[4] As Judge Wood announced at the sentencing, Defendant faced a sentence for both cases in the Sentencing Guidelines range of 92 to 115 months of imprisonment; the probation officer recommended a sentence of 84 months of imprisonment. Moreover, although Defendant Griffin received a sentence in CR 107-105 equivalent to the statutory maximum of five years, he faced a statutory maximum sentence of 20 years of imprisonment on the drug charge alone to which he pleaded guilty in CR 107-165. That Defendant Griffin received a total sentence of imprisonment of 78 months, 6.5 years, must certainly be viewed as a favorable outcome for Defendant Griffin.

---

cooperation offered by Defendant Griffin. At sentencing, Judge Wood specifically mentioned that revision and its impact on her decision to depart downward from the Advisory Sentencing Guidelines.

[4]On December 13, 2007, Defendant Brown was charged with one count of Possession of a Firearm and Ammunition by a Convicted Felon, in violation of 18 U.S.C. § 922(g), one count of Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a))(1), and one count of Carrying a Firearm During a Drug Trafficking Crime, in violation of 21 U.S.C. § 924(c). (CR 107-165, doc. no. 1). Defendant Griffin and the government negotiated plea agreements in both CR 107-105 and CR 107-165, and Defendant Griffin entered a guilty plea to the drug possession charge in CR 107-165 on February 20, 2008. (<u>Id.</u>, doc. no. 29). The sentencing for the charges in CR 107-105 and CR 107-065 was held in one proceeding on May 22, 2008. (CR 107-105, doc. no. 99; CR 107-165, doc. no. 39). Mr. Brown also represented Defendant Griffin in CR 107-165, and his request for reimbursement of his CJA-appointed services in that case is addressed in a separate Report and Recommendation.

5

Turning to the specific time entries in support of the CJA voucher, the undersigned finds the 3.8 hours claimed by Mr. Brown for in-court proceedings to have been reasonably spent and billed. However, as to the 48.1 out-of-court hours claimed by Mr. Brown, more detailed comments are warranted.

The first area of concern for the Court is the 5.2 hours claimed for work performed by Michael N. Loebl, a partner at Mr. Brown's firm. As noted in Part I, *supra*, the instructions provided by the Clerk of Court explicitly state that CJA-appointed counsel shall not delegate his responsibilities to other counsel except for emergencies with approval of the Court and consent of the defendant. (See attached Ex. A). Yet, the Guidelines, Part B, § 2.11A clearly provide for compensation of services furnished by a partner or associate within the maximum compensation allowed by the Act.[5] In this case, having reviewed the time entries for Mr. Loebl, the Court finds the time reported to be reasonably spent and helpful to the overall favorable disposition of the case for Defendant Griffin. The Court also finds that in light of the discrepancy between the information available from the Clerk of Court and the Guidelines approved by the Judicial Conference of the United States, the Guidelines should control. Thus, the Court recommends that the full 5.2 hours for Mr. Loebl's work should be compensated.

Next, the Court turns its attention to the time spent by Mr. Brown and paralegal personnel related to the investigation of pending State charges and resolving restitution issues on those State matters. At first blush, these efforts related to pending State charges

---

[5]Curiously, the undersigned cannot recall any attorney receiving a CJA appointment ever having brought this discrepancy to the attention of this Court.

seem unrelated to the federal charge, and therefore not subject to reimbursement. However, upon inquiry to the United States Probation Office, the Court was informed that resolving pending State charges not only lowered the restitution amount owed in the above-captioned case, but the efforts indirectly aided Defendant Griffin in the Sentencing Guidelines calculations because the resolved State charges that did not proceed to trial and/or possible conviction did not contribute his Criminal History point calculation.[6] Moreover, the Court notes that the vast majority of the work done to resolve the State charges was performed by paralegal professionals at a significantly reduced reimbursement rate. Thus, the Court concludes that the out-of-court time spent on the investigation of pending State charges and resolving restitution issues on those State matters should be compensated.

Next, the Court is concerned that there may have been some billing in this case for matters associated with Mr. Brown's representation of Defendant Griffin in CR 107-165 and/or billing in both cases for the same work. In particular, there are several time entries for visits to Defendant Griffin at his place of incarceration that appear in the time sheets for both CR 107-105 and CR 107-165. The time entries have the same descriptions for the same dates, along with concomitant mileage expenses. Although it is highly likely that both cases would have been discussed during visits that occurred after the entry of both guilty pleas but before the joint sentencing, because neither the travel time nor the mileage requests appear to have been halved in either case, it appears that the same entries were simply made in both

---

[6]As noted above, Defendant Griffin already had an extensive criminal history at the time of his arrest on federal charges.

7

cases. The taxpayers should not be billed in both cases, and therefore the Court recommends that the time and mileage for the following entries not be compensated:

- 02/06/2008  To Lincoln County jail for meeting with Mr. Griffin to review plea offer and to discuss the defense strategy. (SHB)
  1.4 hours; $39.20 mileage expense[7]

- 02/14/2008  To Lincoln County jail for meeting with Mr. Griffin to review the plea offer in light of guilty plea on prior indictment. (SHB)   1.4 hours; $39.20 mileage[8]

- 03/18/2008  Meeting with Agent Beach and Mr. Griffin at the Lincoln County jail regarding assistance with investigation and return to Augusta. (SHB)   1.7 hours; no mileage claimed[9]

- 03/24/2008  To Lincoln County jail for meeting with Mr. Griffin to review the presentence investigative report and objections to same; discussion with Agent Beach regarding information obtained on the arrest of Randy Duncan. (SHB)
  1.5 hours; $40.82 mileage[10]

---

[7]As noted above, Defendant pleaded guilty in the above-captioned case on December 14, 2007. (See doc. nos. 81-83). The guilty plea that Defendant Griffin entered on February 20, 2008 was in a different case. (CR 107-165, doc. nos. 29-31). This entry also appears in the time sheets for CR 107-165.

[8]The information in footnote 7, *supra*, applies to this entry as well.

[9]This entry appears, along with a claim for mileage, in CR 107-165 with a claim for one-tenth of an hour less time for Interviews and Conferences. In any event, as Agent Beach works for the Bureau of Alcohol, Tobacco, Firearms, and Explosives, his involvement would most likely have been for the case involving a firearm (as further evidenced by the multiple references to Agent Beach in the firearms case), CR 107-165, rather than the above-captioned counterfeit securities case in which this time entry appears.

[10]This entry also appears in the time sheets for CR 107-165. Moreover, Randy Duncan was an individual involved with the charges in CR 107-165, not CR 107-105.

8

- 04/21/2008    To Lincoln County jail for meeting with Mr. Griffin to discuss recent conversations with Mr. Dallas and return to Augusta. (SHB)    1.4 hours; $40.82 mileage[11]

- 05/21/2008    To Lincoln County jail for meeting with Mr. Griffin to prepare same for the sentencing hearing.
  1.0 hour; $40.82 mileage[12]

(Out-of-Court Hourly Worksheet, pp. 16-18; Other Expense Worksheet, pp. 2-3). Accordingly, the Court recommends that 8.4 hours be deducted from the 48.1 hours of out-of-court hours claimed by Mr. Brown, along with the $200.86 claimed for mileage.[13]

Lastly, the Court turns its attention to the hours claimed by Mr. Brown for discussions with Defendant Griffin's parents. Some of the time entries clearly relate to resolving pending State charges which, as discussed above, the Court has recommended should be compensated.[14] However, four entries concerning discussion between Mr. Brown and Defendant Griffin's parents are not clearly delineated as related to resolution of pending State charges. While the Court does not doubt Mr. Brown expended the claimed time in a good

---

[11]This entry also appears in the time sheets for CR 107-165.

[12]This entry also appears in the time sheets for CR 107-165 under the date 05/12/2008. However, as the claim for mileage in the above-captioned case for this trip appears at the date of 05/12/2008 (with no other claims for mileage in May), it appears that the date was simply transposed from "12" to "21" in the time entries.

[13]As these 8.4 hours were billed at the rate of $100.00 per hour, the dollar value of the recommended reduction is $840.00. When the $200.86 claimed for mileage (Other Expense Worksheet, pp. 2-3) is added to the $840.00, the total dollar value of the recommended reduction is $1,040.86. Of course, these amounts will be available for compensation in CR 107-165.

[14]For instance, one entry for a paralegal professional reads: "Calls to the residence of Vickie Thompson, Byron's mother and to her cell number in attempt to locate and discuss with her the amount of restitution required for dismissal of Edgefield and City of Aiken Warrants on Byron Griffin." (Out-of-Court Hourly Worksheet, p. 12, Dec. 12, 2007 Entry).

9

faith effort to keep Defendant Griffin's parents informed of the whereabouts of their son and the progression of the case, the Court cannot recommend that taxpayers be billed for this time. As one court has explained, "What is commendable, however, is not necessarily compensable." United States v. Smith, 76 F. Supp. 2d 767, 769 (S.D. Tex. 1999); see also United States v. Fedor, No. 07-20621-CR-SEITZ, 2008 WL 2264556, at *4 (S.D. Fla. May 7, 2008), *adopted by* United States v. Fedor, No. 07-20621-CR, 2008 WL 2264554 (S.D. Fla. June 2, 2008) (reducing time on CJA voucher for time spent conferring with the defendant's relatives on items not required for defense of the case but instead "to explain the judicial process and counsel's plans"). Therefore, the Court recommends that the 1.5 hours billed for the following entries not be compensated:[15]

- 11/06/2007  Post-arraignment discussion with Mr. Griffin's mother regarding status of pending charges (SHB)  .40 hour

- 11/07/2007  Discussion with Mr. Griffin's mother regarding her need to visit him and his current location (SHB)  .30 hour

- 12/27/2007  Discussion with Mr. Griffin's father regarding the pending charges against his son (SHB)  .50 hour

- 01/02/2008  Return call to Mr. Griffin's father regarding status of his pending charges and the sentencing hearing (SHB)  .30 hour.

---

[15]As .70 of an hour was billed at the rate of $94.00 and .80 of an hour was billed at $100.00 per hour, the total dollar value of the recommended reduction is $145.80.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Mr. Brown's voucher be reduced by $1,186.66 and that Mr. Brown be reimbursed for a total amount of **$4,630.41**.

SO REPORTED and RECOMMENDED this 21st day of August, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

# U. S. District Court    Attorney - CJA

The following information is provided for the guidance of privately practicing attorneys appointed, pursuant to the Criminal Justice Act (18 U.S.C. 3006A), to represent a person financially unable to obtain adequate representation.

## Duties of Appointed Counsel: http://jnet.ao.dcn/Guide/Volume_7/Section_A.html

1. Counsel named in the Order of Appointment Form CJA 20 must personally appear at all proceedings. Counsel shall not delegate his or her responsibility to other counsel (except for emergencies with approval of the court and consent of defendant). Counsel who is unable to personally fulfill his or her obligation to a defendant because of health or other good reason should immediately so notify the court in writing.

2. Counsel is required to secure the appearance of the defendant at all pretrial conferences and at all other proceedings requiring the appearance of the defendant.

3. Counsel shall fulfill his or her professional responsibility as an officer of the court, and the limited amount of compensation accruing in no respect diminishes such responsibility.

4. Counsel appointed by the U. S. District Court shall continue to serve until his or her representation is terminated by the provisions of the plan of the court, adopted pursuant to the Criminal Justice Act of 1964, as amended by Public Law 91-447, or by court order.

5. Counsel shall report, to the court, any change in the financial status of the person he or she was appointed to represent which indicates the ability of the person to finance all or part of the representation.

**Termination of Appointment:** Representation of a defendant in a criminal case shall terminate with the imposition of sentence following the acceptance of a plea of guilty, a plea of nolo contendere, or the finding of a guilty verdict. **Counsel shall, following the imposition of sentence in a criminal case where the defendant has been found guilty after trial or entered a plea of guilty, advise the defendant of his or her right to appeal and of his or her right to counsel on appeal. If requested to do so by the defendant, counsel shall file a timely Notice Of Appeal. Counsel on appeal shall be appointed by the Court of Appeals. Representation in all other proceedings shall terminate when the purpose of the appointment is accomplished or when terminated by court order.**

**Compensation:** **Counsel shall be compensated at a rate not exceeding $100.00 per hour for time expended in court and for time reasonably expended out of court, and shall be reimbursed for expenses reasonably incurred. All time should be reported in one-tenth increments**

1

EXHIBIT A